Texas **STATE BOARD OF MEDICAL EXAMINERS, Appellant**

v.

Stanislaw R. **BURZYNSKI,** M.D., Ph.D., Appellee.

No. 03–95–00222–CV.

Court of Appeals of Texas, Austin.

Feb. 7, 1996.

Rehearing Overruled April 3, 1996.

Dan Morales, Attorney General and Dewey E. Helmcamp, III, Assistant Attorney General, General Counsel Division, Austin, for appellant.

Richard A. Jaffe, Houston, for appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

CARROLL, Chief Justice.

Appellant Texas State Board of Medical Examiners ("the Board") ordered that appellee Dr. Stanislaw Burzynski's license to practice medicine be suspended and that such suspension be stayed with Dr. Burzynski being placed on probation for ten years under certain conditions.[1] Upon judicial review of the Board's order, the district court reversed the order in its entirety and dismissed the cause. In two points of error, the Board asserts that the trial court erred in finding that TMPA section 5.09(a) authorizes Dr. Burzynski's use of antineoplastons in Texas and that the false advertising statute is unconstitutional. We will reverse the judgment of the trial court and render judgment in accordance with the order of the Board.

## BACKGROUND

This case arises from an unorthodox treatment for cancer called "antineoplastons" that Dr. Burzynski has worked to develop since he was in medical school in the sixties.[2] Dr. Burzynski, licensed to practice medicine in Texas, has been the subject of frequent litigation as a result of these antineoplastons, which are not approved for commercial interstate marketing by the Federal Food and Drug Administration ("FDA").

In 1977, Dr. Burzynski left his position as a laboratory researcher at the Baylor College of Medicine. After satisfying himself as to the legality of his treatment, Dr. Burzynski turned down a faculty position at the University of Tennessee and its corresponding research grant, opened a laboratory in Houston, Texas, and went into private practice using antineoplastons in his treatment of cancer patients.

In 1983, the FDA obtained an injunction from a federal district court prohibiting Dr. Burzynski and the Burzynski Research Insti-

---

1. Among other things, the conditions include: (1) compliance with federal and Texas law relating to the manufacture and distribution of drugs; (2) not advertising in violation of § 431.183 of the Texas Health & Safety Code (the "false advertising statute"); (3) providing all hospitals and health care entities where he has privileges with a copy of the Board's order; (4) cooperation with Board attempts to verify compliance with its order; (5) advising the Board of all address changes; (6) extension of the duration of the order equal to the time spent practicing medicine outside of Texas, in retirement, or with a license that was cancelled for nonpayment of licensure fees; and (7) compliance with the Texas Medical Practice Act ("TMPA") and other statutes regulating the practice of medicine.

2. "Simply stated, antineoplastons are a special class of peptides, found in the blood, that combat neoplastons—abnormal cells or cancer cells." *Trustees of the Northwest Laundry v. Burzynski*, 27 F.3d 153, 155 n. 1 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

tute from shipping antineoplastons in interstate commerce without first obtaining the approval of the FDA. *See United States v. Burzynski Cancer Research Inst.*, No. H–83–2069 (S.D.Tex. May 24, 1983) (order granting permanent injunction). The injunction, however, did not preclude intrastate distribution of the antineoplastons.

In 1986, the Board notified Dr. Burzynski that it was concerned about his antineoplaston treatment and about whether his drug was actually safe and therapeutic to patients. Dr. Burzynski and the Board entered into an affidavit agreement under which the Board was supplied with partial medical records of some of Dr. Burzynski's patients. Two oncologists reviewed these records, covering approximately 60 patients, and were unable to conclude with any certainty that Dr. Burzynski's patients benefitted from the antineoplastons.[3]

In May 1988, the Texas Department of Health informed Dr. Burzynski by letter that his use of antineoplastons violated section 18 of the Texas Health & Safety Code.[4] Soon after receiving a copy of the letter, the Board initiated this administrative proceeding.

Dr. Burzynski was charged by the Board with three types of misconduct in four counts. Counts I and II alleged that Dr. Burzynski's use of antineoplastons violated section 18 of the Health & Safety Code which also constitutes a violation of section 3.08(4)(A) of the TMPA. Count III charged Dr. Burzynski with violating the false advertising statute in addition to committing false advertising in violation of TMPA sections 3.08(6) and 3.08(4)(A). Count IV charged Dr. Burzynski with collecting a fee for his treatment in violation of federal regulations and TMPA section 3.08(4)(G).

Hearings began on May 24, 1993, and at their conclusion, an administrative law judge issued a Proposal for Decision, finding for Dr. Burzynski on Counts I, II and IV and for the Board on Count III in part. The administrative law judge essentially found that it is and always has been legal for Dr. Burzynski to administer antineoplastons to his patients in Texas.

Despite the Proposal for Decision, the Board issued its own findings of facts and conclusions of law and concluded that it is and always has been illegal for Dr. Burzynski to use his antineoplastons in Texas because TMPA section 5.09 does not allow physicians to prescribe drugs that have not been approved by the FDA.

Upon judicial review, the district court found the Board's order "in violation of constitutional and statutory provisions, affected by other error of law, and arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion," reversed it in its entirety, and dismissed the cause.

## DISCUSSION

In its first point of error, the Board asserts that the trial court erred in finding that TMPA section 5.09(a) authorizes Dr. Burzynski's use of antineoplastons. The Board contends that it is and always has been illegal for Dr. Burzynski to use his medicines in Texas and that section 5.09(a) does not allow physicians to prescribe non-FDA approved drugs. First, the Board asserts that, if Dr. Burzynski's interpretation of section 5.09(a) is correct, there is no need for an FDA, for rules and regulations pertaining to FDA approval of drugs, or for any regulation of a physician's drug practices.

Second, the Board argues that Dr. Burzynski and the trial court failed to consider the complete text of section 5.09(a). The Board asserts that the section was enacted to authorize physicians *to supply* necessary drugs, remedies or clinical supplies, including pharmaceutical samples, for immediate patient needs without requiring the physician to fully comply with the Texas Pharmacy Act.[5] Ac-

---

3. Some of the patients benefitted while under Dr. Burzynski's care, but the Board's oncologists were unable to determine whether the benefit was the result of the antineoplastons or the delayed effect from some prior form of treatment.

4. Section 18 preceded what is today § 431.114 of the Texas Health and Safety Code.

5. Tex.Rev.Civ.Stat.Ann. art. 4542a–1 (West Supp. 1996).

cording to the Board, the section was not intended to allow physicians to supply patients with drugs that are not FDA-approved.

In response, Dr. Burzynski claims that the trial court correctly concurred with the administrative law judge and that Dr. Burzynski is permitted to use antineoplastons on his own patients in Texas. First, Dr. Burzynski points out that the FDA only governs the interstate commercial distribution of drugs and cannot regulate or limit the drugs a licensed physician can prescribe. Dr. Burzynski notes that Congress did not intend the FDA to interfere with the medical practice of treating patients and argues that this is why a federal district court, in 1983, refused to enjoin him from prescribing his medicine to his patients in Texas.

Second, Dr. Burzynski argues that section 5.09(a) provides all physicians with the legal right to administer *any drug* or remedy to meet immediate patient needs. Dr. Burzynski notes that it is constitutionally permissible for a court to depart from the plain language of a statute only if necessary to avoid an absurd result.

Finally, Dr. Burzynski contends that the Board incorrectly asserts that the trial court's interpretation of section 5.09(a) would prevent the Board from protecting the public because a licensed physician could then prescribe without regulation any drug, FDA-approved or not, to any patient. Dr. Burzynski points out that the Board can still protect the public because, upon a finding that a drug is non-therapeutic or that a physician administered the drug in a manner not consistent with the public health, the Board can discipline such a physician and prohibit the use of any drug under the authority of TMPA section 3.08(E) and (F). Noting that undisputed testimony from physicians and patients showed that his treatment actually works, Dr. Burzynski argues that the Board did not assert a violation of these sections in this case because they could not do so with any success.

Under the subtitle "Authority to Supply Drugs," section 5.09 provides in pertinent part that:

(a) *A physician licensed to practice medicine under this Act may supply patients with any drugs, remedies, or clinical supplies as are necessary to meet the patients' immediate needs.* This subsection does not permit the physician to operate a retail pharmacy without first complying with the Texas Pharmacy Act.

(b) Nothing in this section shall prohibit the physician from supplying pharmaceutical samples to the patient, free of charge, if, in the opinion of the physician, it is advantageous to the patient, in adhering to a course of treatment prescribed by the physician, to receive such pharmaceutical samples.

. . . . .

(c) A licensed physician who practices medicine in a rural area in which there is no pharmacy may maintain a supply of dangerous drugs in the office of the physician to be dispensed in the course of treating the physician's patients and may be reimbursed for the cost of supplying those drugs without obtaining a license under the Texas Pharmacy Act.

Tex.Rev.Civ.Stat.Ann. art. 4495b, § 5.09(a–c) (West Supp.1996) (emphasis added).

Read as a whole, section 5.09 is concerned with physicians' compliance with the Texas Pharmacy Act and does not authorize physicians to dispense unauthorized drugs. Rather, section 5.09 was intended to allow a physician to supply drugs to a patient in immediate need without violating the provisions of the Texas Pharmacy Act. Section 19(c) of the Texas Pharmacy Act provides that "[t]his Act does not apply to a practitioner licensed by the appropriate state board *who supplies his patients with drugs in a manner authorized by state or federal law* and who does not operate a pharmacy for the retailing of prescription drugs." Tex. Rev.Civ.Stat.Ann. art. 4542a–1, § 19(c) (West 1996). TMPA section 5.09 simply sets forth the manner by which Texas authorizes a practitioner to supply his patients with drugs absent a license under the Texas Pharmacy Act.

Section 431.114 of the Health & Safety Code provides in pertinent part that:

(a) A person shall not sell, deliver, offer for sale, hold for sale or give away any new drug unless:

(1) an application with respect thereto has been approved and the approval has not been withdrawn under Section 505 of the federal Act; and

(2) a copy of the letter of approval or approvability issued by the Federal Food and Drug Administration is on file with the commissioner if the product is manufactured in this state.

Tex.Health & Safety Code Ann. § 431.114 (West 1992).

Section 431.114 sets forth the requirements which a physician must meet in order to "sell, deliver, offer for sale, hold for sale or give away any new drug. . . ." In *Northwest Laundry*, the Fifth Circuit concluded that TMPA section 5.09 must be read in harmony with section 431.114 of the Health & Safety Code and accordingly rejected the exact argument that Dr. Burzynski repeats in this case. *Northwest Laundry*, 27 F.3d at 158; *see* Tex.Gov't Code Ann. § 311.026(a) (West 1988) ("If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both."). The Fifth Circuit stated that "[r]eading the statutes together, we cannot conclude that TMPA § 5.09 authorizes Dr. Burzynski to do anything forbidden by Health & Safety Code § 431.114." *Northwest Laundry*, 27 F.3d at 158. According to the Fifth Circuit, when read as a whole, TMPA section 5.09 was only intended to authorize physicians to dispense drugs when urgent necessity precludes resort to a pharmacy. *Id.*

After meeting the requirements of section 431.114 of the Health & Safety Code, a physician may then supply such a drug to a patient without complying with the Texas Pharmacy Act as authorized by TMPA section 5.09, but only to meet a patient's immediate needs. The Texas Administrative Code de-

fines "immediate needs" as "[t]he amount of a prescription drug needed for the proper treatment of a patient until access to a pharmacy is possible." 22 Tex.Admin.Code § 169.2 (West 1995).[6] This definition of "immediate needs," by itself, further supports the proposition that TMPA section 5.09 was solely intended to provide physicians with authority to supply drugs to patients without being licensed as pharmacists under the Texas Pharmacy Act; it does not authorize the distribution of drugs which are not FDA-approved.

Dr. Burzynski acknowledges that, in 1983, a federal district court permanently enjoined him from shipping his antineoplastons in interstate commerce. However, Dr. Burzynski points to the fact that the federal court refused to enjoin him from prescribing his medicine to his patients in Texas and argues that, by this refusal, the federal court authorized his distribution of antineoplastons in Texas.

The Fifth Circuit also addressed this argument in *Northwest Laundry*. The court found that the federal injunction in that case, which is the same injunction with which we are dealing, was simply silent on the legality of intrastate distribution of antineoplastons. *Northwest Laundry*, 27 F.3d at 158. "Although the injunction did not forbid intrastate distribution, neither did it excuse Dr. Burzynski from compliance with state laws governing intrastate distribution of antineoplastons." *Id.*

■■■ We are not concerned with how long section 431.114 of the Health & Safety Code has been in existence or whether it has been previously applied to restrict a physician's decision regarding patient care. The Board appropriately read section 431.114 in harmony with TMPA section 5.09 and correctly found that TMPA section 5.09 does not authorize Dr. Burzynski to distribute drugs that have not been approved by the FDA. Further, in its 1983 injunction, the federal district court, by failing to enjoin Dr. Bur-

6. The purpose of chapter 169 of the Texas Administrative Code "is to provide physicians with guidelines for supplying drugs to their patients as authorized by Texas Civil Statutes, Article 4495b, § 3.06(d)(2) and § 5.09, and by the Texas Pharmacy Act." 22 Tex.Admin.Code § 169.1 (West 1995).

zynski from distributing his antineoplastons in Texas, did not authorize such distribution under state law. We hold that the trial court erred in finding that TMPA section 5.09 authorizes Dr. Burzinski's use of antineoplastons, and accordingly, we sustain the Board's first point of error.

In its second point of error, the Board claims that the trial court erred in holding the false advertising statute unconstitutional.[7] The Board argues that chapter 431 of the Health and Safety Code fulfills a narrow governmental purpose of protecting the health and safety of Texas citizens from individuals or entities that would mislead or make false representations about their drugs or devices. According to the Board, this statute does not restrict what a doctor may tell a patient in the course of prescribing a treatment, a doctor's ability to advertise generally, or a doctor's ability to write to other members of the medical profession in scientific journals or other similar publications. The Board further contends that the statute in no way restricts pure speech and that it does not infringe upon any legitimate rights of Dr. Burzynski or of any other health care provider.

Dr. Burzynski argues that there are three constitutional problems with the false advertising statute. First, Dr. Burzynski claims that the statute is facially overbroad because, in its attempt to restrict some forms of commercial speech, it actually prohibits many forms of protected pure speech. Second, even assuming Dr. Burzynski's representations are considered pure commercial speech, Dr. Burzynski asserts that professionals, such as himself, cannot be prohibited from making direct mail solicitations which contain truthful and non-deceptive representations. Third, Dr. Burzynski claims that the State has not met its burden of proof regarding the existence of a reasonable fit between a legitimate governmental interest and the restrictions imposed by the statute.

■■■ We must first determine whether the expression at issue is commercial speech. The test for identifying commercial speech is whether the brochure and articles Dr. Burzynski distributes to patients and prospective patients "propose a commercial transaction." *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 473, 109 S.Ct. 3028, 3031, 106 L.Ed.2d 388 (1989) (quoting *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976)). After explaining that "[t]he majority of cancer patients treated in [the Burzynski Research] Institute showed positive response to treatment" and that the "therapy is producing long-term remission in a number of patients," Dr. Burzynski's brochure contains several sections, some of which are titled: "Cost of Antineoplaston Treatment and Other Expenses," "Insurance," "How to Make an Appointment," "Accommodations," "Traveling to Houston," and "What to Expect Upon Arriving at the Clinic." This brochure, coupled with the various articles distributed by Dr. Burzynski, clearly proposes a commercial transaction and thus constitutes commercial speech.

■■■ Thus, concluding that Dr. Burzynski is engaged in commercial speech, we acknowledge that the free flow of commercial information is critical in a free enterprise system. *See Rubin v. Coors Brewing Co.*, 514 U.S. ——, 115 S.Ct. 1585, 1589, 131 L.Ed.2d 532, 538 (1995) (citing *Virginia State Bd. of Pharmacy*, 425 U.S. at 763, 96 S.Ct. at 1826). Because of the nature of commercial speech, however, certain types of restrictions are tolerable. *Id.* (citing *Virginia State Bd. of Pharmacy*, 425 U.S. at 770, 96 S.Ct. at 1829). In determining whether a regulation of commercial speech survives First Amendment scrutiny, we look to the factors set forth in *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both in-

7. The false advertising statute states that "[a]n advertisement of a drug or device is false if the advertisement represents that the drug or device affects neoplasms" or cancer. Tex.Health & Safety Code Ann. § 431.183(a)(2) (West 1992).

quiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351.

▊ In this case, Dr. Burzynski's commercial speech does not concern a lawful activity. The FDA has not approved an application for Dr. Burzynski's new drug. Further, because he has not obtained such approval, Dr. Burzynski has failed to file a copy of a letter of approval or approvability with the commissioner. As set forth above, section 431.114 of the Health & Safety Code requires these two things before a person shall "sell, deliver, offer for sale, hold for sale or give away any new drug." Accordingly, Dr. Burzynski's failure to meet these requirements is a violation of section 431.114.

The First Amendment's concern for commercial speech is based on the informational function of advertising. Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it or *commercial speech related to illegal activity.*

*Central Hudson,* 447 U.S. at 563–64, 100 S.Ct. at 2350 (citations omitted). Because Dr. Burzynski's speech concerns an illegal activity, he is not entitled to First Amendment protection.

Further, it is well recognized that a court should not pass upon a statute's validity based solely upon the complaint of one who fails to show that he is injured by its operation. *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936); *Tri–Steel Structures, Inc. v. Hackman,* 883 S.W.2d 391, 396 (Tex.App.— Fort Worth 1994, writ denied); *Hill Country Spring Water, Inc. v. Krug,* 773 S.W.2d 637, 641 (Tex.App.—San Antonio 1989, writ denied). Because Dr. Burzynski is not entitled to the normal protections provided by the First Amendment to commercial speech, it follows that he was not injured by the opera-

tion of the false advertising statute. Thus, it was error for the trial court to rule on the statute's validity, and we sustain the Board's second point of error.

## CONCLUSION

Dr. Burzynski's patients are extremely vulnerable. They will pursue any treatment which provides them with even a glimmer of hope because they feel it better to pursue every possibility rather than resign themselves to the fate that almost certainly awaits. This pursuit of life can at times lead to irrational thoughts, and certain opportunists would not hesitate to prey on their vulnerability. The State of Texas in conjunction with the FDA protects these patients from such exploitation. Although we do not mean to imply that Dr. Burzynski is such an opportunist, neither can we find him to be above the laws written to protect his patients. We will not allow our sympathy for the terminally ill to hinder our duty to uphold the law. *See Northwest Laundry,* 27 F.3d at 159–60; *United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1315 (5th Cir.1987).

Because we sustain the Board's points of error, we reverse the judgment of the trial court and render judgment in accordance with the Board's order of August 31, 1994.