TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00181-CV






Amalgamated Acme Affiliates, Inc. and University Sports


Publications Co., Inc., Appellants



v.



Perry Minton and Dean Allen Associates, Ltd., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 99-12045, HONORABLE MARGARET COOPER, JUDGE PRESIDING







 Appellant University Sports Publications Co., Inc. (University Sports) brings this
appeal from a temporary injunction ordering it to refrain from making certain representations to
customers and advertisers of appellees Dean Allen Associates, Ltd. (Dean Allen) and its founder
Perry Minton.(1) University Sports asserts five issues on appeal including constitutional free speech
and due process arguments. We overrule these contentions and affirm the trial court's ruling.


FACTUAL AND PROCEDURAL BACKGROUND

 University Sports, a New York corporation, sells advertising space in sporting-event programs. Its affiliate, Amalgamated Acme Affiliates, Inc. (Amalgamated Acme), a Texas
corporation, conducts market research. Minton worked for Amalgamated Acme until April 23,
1999. On July 8, 1999, Minton formed Dean Allen to sell advertising space for sports-event
publications. Dean Allen competes directly with Amalgamated Acme and University Sports.

 In October 1999, Minton sued Amalgamated Acme to establish both parties' rights
and obligations to one another. In the original petition, Minton alleged that Amalgamated Acme
falsely asserted to both Minton and his customers that he was subject to, and in violation of, a non-compete agreement. Minton maintains that he did not sign a non-compete agreement and that the
only possible agreement that Amalgamated Acme alludes to is an employee-confidentiality
agreement. The record does not include any agreements signed by Minton. In his suit, Minton
claimed that Amalgamated Acme's assertions were defamatory and constituted tortious interference
with his contracts and business relationships. On February 14, 2000, Minton amended his petition
joining Dean Allen as a co-plaintiff and University Sports as a defendant, simultaneously seeking
a temporary restraining order (TRO) to prevent the defendants from making certain representations
about Minton. The trial court granted the TRO that same day, and set a hearing on the temporary
injunction for the afternoon of February 22.

 The citation, amended petition, and TRO were served on University Sports at its
New York offices on February 16. In the meantime, Amalgamated Acme filed a motion to
dissolve the TRO. On February 22, based on information gleaned during a deposition that
morning, Minton notified Amalgamated Acme that he had non-suited his claims for injunctive
relief against it and would only seek such relief against University Sports. University Sports
authorized Ralph Rash, who was representing Amalgamated Acme, to adopt the motion to dissolve
the TRO and argue the motion's dissolution on University Sports' behalf at the hearing. Further,
University Sports instructed Rash to seek a continuance of the temporary injunction hearing. 
University Sports did not authorize Rash to address the merits of the temporary injunction itself.

 At the hearing on the temporary injunction, the trial court offered to grant the
motion for continuance and extend the TRO. Rash opposed extending the TRO, contending that
it was overly broad and enjoined legal conduct. The trial court consequently denied the motion
for continuance and declined to hear the motion to dissolve the TRO, explaining that a ruling on
the temporary injunction would make the motion moot. Because Rash was not authorized to argue
the merits of the temporary injunction, he requested leave of the court and was dismissed. The
court proceeded with the temporary injunction hearing.

 Minton testified that University Sports employees had contacted between forty and
fifty of his customers falsely holding themselves out as representatives of the Austin Independent
School District (AISD) and the University of Texas. These individuals then proceeded to tell the
customers that Minton did not have a contract with either school, that Minton was under
investigation, and that the customers should withhold payments to Minton. One set of materials
in the record suggests that University Sports drafted letters of complaint on the customers' own
letterhead for them to sign and return to University Sports. Minton introduced evidence showing
how University Sports circulated these letters to other customers and forwarded the complaints to
Pat Forgione, superintendent of AISD, and Dr. Larry Faulkner, president of the University of
Texas. Several customers stopped paying and performing under their contracts with Minton after
receiving these letters.

 One University Sports employee falsely identified himself as Perry Minton to one
of Minton's customers; the customer then discovered the caller was not Minton. A heated
conversation ensued, and the University Sports employee told the Texas customer that he would
have to fly to New York for a seven-hour deposition.

 In another incident, University Sports employee Julie Wong impersonated Felicia
Martinez. Martinez is the secretary for the athletic director of the Fort Worth Independent School
District. Minton and University Sports were competing for a contract with that school district. 
Wong called Minton, identifying herself as Martinez. She told him that the school district was
"looking to start negotiations," but needed references from current projects. Minton began to
share his confidential list of customers with Wong until he became suspicious. He asked to speak
to the athletic director, but Wong said he was unavailable and quickly hung up. Minton
immediately called the athletic director's office, and Martinez denied having just talked with him.

 Minton told the court that when he first formed Dean Allen, officers of University
Sports told him that it was unfortunate he had chosen to compete with University Sports because
it "had just spent $600,000 in 30 something lawsuits on a multi-state level to put the last folks that
had tried this business out of business." Minton testified that due to University Sports' conduct
his company was already having "serious trouble," losing some customers who received the
complaint letters. Further, he stated that University Sports' conduct "makes it impossible for me
to seek new business, because naturally the new businesses that I'm prospecting want to speak to
the people that I'm currently doing business with." He concluded, "I firmly believe that if I don't
receive this injunction, I will be put out of business."

 The trial court granted the temporary injunction. University Sports, the only party
enjoined, brings this interlocutory appeal asking us to dissolve the temporary injunction. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2000).


STANDARD OF REVIEW

 To obtain a temporary injunction, an applicant need only show a probable right to
recover on final trial and probable injury in the interim. See Texas Alcoholic Beverage Comm'n
v. Amusement & Music Operators of Tex., Inc., 997 S.W.2d 651, 657 (Tex. App.--Austin 1999,
pet. dism'd w.o.j.). The applicant seeking a temporary injunction does not have to prove that it
will finally prevail in the litigation. Transport Co. of Tex. v. Robertson Transps., Inc., 261
S.W.2d 549, 552 (Tex. 1953). The purpose of a temporary injunction is to preserve the status quo
pending a trial on the merits. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). In an appeal
from an order granting or denying a request for a temporary injunction, appellate review is
confined to the validity of the order that grants or denies the injunctive relief. Universal Health
Servs., Inc. v. Thompson, 24 S.W.3d 570, 576 (Tex. App.--Austin 2000, no pet.). The decision
to grant or deny the injunction lies within the sound discretion of the court, and we will not
reverse that decision absent a clear abuse of discretion. Id. This Court may neither substitute its
judgment for that of the trial court nor consider the merits of the lawsuit. See id. Rather, we view
the evidence in the light most favorable to the trial court's order, indulging every reasonable
inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds
of reasonable discretion. See id.

DISCUSSION

I. Free Speech

 A. Prior Restraint

 University Sports characterizes the temporary injunction as a prior restraint on its
right to free speech, which is prohibited by the United States and Texas Constitutions. See U.S.
Const. amend. I; Tex. Const. art. I, § 8; see also Davenport v. Garcia, 834 S.W.2d 4, 10 (Tex.
1992).(2) The order commands University Sports to desist and refrain from:


(a) communicating to the Austin Independent School District, the University of
Texas, Host Communications, Inc., Longhorn Sports Network, the University
of Texas--San Antonio, any businesses known to be a customer of Dean Allen,
and/or any businesses known to be a potential customer of Dean Allen
(including all employees and agents of all of the foregoing businesses) that
Dean Allen or Minton has committed fraud, made misrepresentations, engaged
in a scam, engaged in unfair competition, hurt the Austin Independent School
District, hurt the University of Texas, hurt any other customer, violated any
contract or agreement, or violated any law;


(b) communicating to the advertisers on Exhibit A [attached to the temporary
injunction], any business known to be an advertiser with Dean Allen, and/or
any business known to be a potential advertiser with Dean Allen (including all
employees and agents of all the foregoing businesses) that Dean Allen or
Minton has committed fraud, made misrepresentations, engaged in a scam,
engaged in unfair competition, hurt the Austin Independent School District,
hurt the University of Texas, hurt any other customer, violated any contract
or agreement, or violated any law;


(c) suggesting or communicating to Dean Allen's customers or advertisers that
they should not pay their invoices to Dean Allen;


(d) representing itself as being representatives of the Austin Independent School
District, the University of Texas, the University of Texas--San Antonio, or
any other school district or agency, including any department or agency
thereof.


(e) representing itself as being representatives of Dean Allen, including any
employee or agent of Dean Allen.

 


 The Texas Constitution provides that "[e]very person shall be at liberty to speak,
write or publish his opinions on any subject, being responsible for the abuse of that privilege
. . . ." Tex. Const. art. I, § 8. This free speech right, in some aspects, is interpreted more
broadly than its federal equivalent. Davenport, 834 S.W.2d at 8-9. Because we decide this issue
under the Texas Constitution, we need not reach the constitutionality of the injunction under the
federal constitution, which would not grant any additional relief.

 A prior restraint is an administrative or judicial order forbidding certain
communications when issued in advance of the time that such communications are to occur. 
Reuters Am., Inc. v. Sharp, 889 S.W.2d 646, 653 n.8 (Tex. App.--Austin 1994, writ denied)
(quoting Alexander v. United States, 509 U.S. 544, 550 (1993)). Under the Texas Constitution,
prior restraints are presumptively unconstitutional. Davenport, 834 S.W.2d at 10. Courts prefer
to sanction a speaker after, rather than before, the speech occurs. Id. at 9. Prior restraints may
withstand constitutional scrutiny only when a trial court makes specific findings supported by the
evidence that (1) an imminent and irreparable harm will deprive litigants of a just resolution of
their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm. 
Id. University Sports asserts that the injunction was invalidly granted because the court failed to
make these specific findings.


 B. Commercial Speech

 Minton asserts that the enjoined speech is not protected by the constitution because
it is commercial speech that is false and misleading.(3) Commercial speech is "expression related
solely to the economic interests of the speaker and its audience." Central Hudson Gas & Elec. v.
Pub. Serv. Comm'n, 447 U.S. 557, 561 (1980). Because of the nature of commercial speech,
some forms of regulation are permissible. State Bd. of Med. Exam'rs v. Burzynski, 917 S.W.2d
365, 370 (Tex. App.--Austin 1996, writ denied). Commercial speech is more objective, and
hence more verifiable, than other types of speech. Friedman v. Rogers, 440 U.S. 1, 10 (1979). 
Further, "because of its importance to business profits, and because it is carefully calculated, [it]
is also less likely than other forms of speech to be inhibited by proper regulation." Id. For these
reasons, restraints are appropriate to prevent speech from being deceptive. Id. These
characteristics of commercial speech "may also make inapplicable the prohibition against prior
restraints." Id. (citing Virginia Pharmacy Bd. v. Virginia Consumer Council, 425 U.S. 748, 775-81 (1976) (Stewart, J., concurring)). 

 University Sports disputes that the enjoined language is commercial speech. It
asserts that commercial speech must promote a commercial transaction. See Central Hudson, 447
U.S. at 562. Central Hudson involved advertising by a gas and electric company that promoted
the use of electricity. Id. at 558. The Supreme Court noted that it has traditionally distinguished
speech proposing a commercial transaction from other varieties of speech. Id. at 562.

 We decline to define commercial speech as narrowly as University Sports suggests. 
Individual communications opposing a proposed automobile mall were held clearly to be
commercial speech because they related solely to the economic interests of the speaker and its
audience. ES Dev., Inc. v. RWM Enters., Inc., 939 F.2d 547, 558 n.6 (8th Cir. 1991) (affirming
temporary injunction but modifying it to last for only three years), cert. denied, 502 U.S. 1097
(1992). In ES Development, car dealers sent letters to their manufacturers opposing a proposed
automobile mall. As a result of these letters, Ford, Oldsmobile, and Cadillac pulled out of
negotiations to place franchises in the automobile mall. The court held that these letters
constituted commercial speech. Id. Similarly here, University Sports' speech is intended to end
contractual relationships between Minton and his customers, or to prevent contractual relationships
with potential customers. We hold that the speech in question is commercial speech.

 To enjoy any protection, commercial speech must not be false or misleading. 
Burzynski, 917 S.W.2d at 370 (quoting Central Hudson, 447 U.S. at 566); Owens v. State, 820
S.W.2d 912, 914 (Tex. App.--Houston [1st Dist.] 1991, writ ref'd) ("Intentionally false or
misleading statements made in a commercial context are not protected . . . ."). "'[T]here can be
no constitutional objection to the suppression of commercial messages that do not accurately
inform the public about lawful activity. The government may ban forms of communication more
likely to deceive the public than to inform it . . . .'" Burzynski, 917 S.W.2d at 371 (quoting
Central Hudson, 447 U.S. at 563-64). Measures may be taken to prevent deception and confusion
even if the speech is not inherently misleading but only potentially misleading. Gonzalez v. State
Bar of Tex., 904 S.W.2d 823, 829 (Tex. App.--San Antonio 1995, writ denied).

 By posing as AISD or the University of Texas or as Minton himself, University
Sports took inherently misleading actions. Its allegations that Minton committed fraud, engaged
in misrepresentations and scams, hurt its customers, and violated contractual agreements and the
law, coupled with suggestions that Minton's clients refuse to pay their invoices, are potentially
misleading. Minton testified that some customers had refused to pay based on University Sports'
allegations.

 We conclude that the trial court properly enjoined speech in a commercial context
that caused deception and confusion. Such commercial speech is not constitutionally protected.(4) 
Consequently, the prohibition against prior restraints is inapplicable here.(6) See Friedman, 440
U.S. at 10.


 C. Temporary Injunction

 An applicant requesting a temporary injunction is not required to establish that she
will prevail at trial. Walling, 863 S.W.2d at 58. The applicant's burden is to establish a probable
right of recovery following a trial on the merits and a probable injury in the interim, warranting
preservation of the status quo pending the trial. Id. at 57. We hold that the trial court did not
abuse its discretion in finding that Minton would have a probable right of recovery following a
trial on the merits.

 Minton demonstrated that he has been injured and will likely be irreparably injured
should the injunction be dissolved. Minton testified at the hearing that he has already irretrievably
lost contracts due to University Sports' conduct. He further explained that it has been impossible
to seek new business that requires references from current contractors. He stated, "I firmly
believe that if I don't receive this injunction, I will be put out of business." Damages after the fact
are inadequate when difficulty arises in calculating damages or when an award arrives too late. 
T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 24 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). We hold that the trial court did not abuse its discretion in granting the
temporary injunction. We overrule University Sports' first point of error.


II. Due Process

 University Sports argues that the trial court violated Texas Rule of Civil Procedure
681 and its constitutional right to due process by holding the temporary injunction hearing without
allowing it a reasonable amount of time to obtain counsel and prepare for the hearing. See Tex.
R. Civ. P. 681; Lowe v. City of Arlington, 453 S.W.2d 379, 382 (Tex. Civ. App.--Fort Worth
1970, writ ref'd n.r.e.). Further, it complains that the court entered an order that does not comply
with Texas Rule of Civil Procedure 683 because the injunction is not specific as to why plaintiffs
would suffer irreparable injury, and because the order is vague and overbroad. See Tex. R. Civ.
P. 683.

 Due process requires adequate and reasonable notice appropriate to the nature of
the hearing. Lowe, 453 S.W.2d at 382. "Such notice involves a reasonable time for preparation." 
Id. Rule 681 reads: "No temporary injunction shall be issued without notice to the adverse party."
Tex. R. Civ. P. 681. This notice requirement implicitly requires that a party must be afforded an
adequate opportunity to be heard. City of Austin v. Texas Pub. Employees Ass'n, 528 S.W.2d
637, 640 (Tex. Civ. App.--Austin 1975, no writ). A party must be given an opportunity to fully
litigate the issue before the court grants the injunction. Tober v. Turner of Tex., Inc., 668 S.W.2d
831, 836 (Tex. App.--Austin 1984, no writ).

 University Sports maintains that it was not given an opportunity to obtain counsel
and prepare for the hearing, or to be heard and litigate the injunction. The trial court did not
foreclose any such opportunity. University Sports argues that the trial court "could easily have
extended the temporary restraining order an additional fourteen days for 'good cause,' and
continued the hearing on the temporary injunction until March 14, 2000." However, when the
court offered to extend the temporary restraining order and grant the motion for continuance,
University Sports did not accept. University Sports cannot now complain that the court violated
Texas rules, or its constitutional right of due process, when University Sports was given an
opportunity to accept a continuance on reasonable terms but rejected it. The grant or denial of a
continuance is within the trial court's sound discretion. Villegas v. Carter, 711 S.W.2d 624, 626
(Tex. 1986). The trial court's action will not be disturbed unless the record discloses a clear abuse
of discretion. Id. By denying University Sports' motion for continuance on these facts, the trial
court did not abuse its discretion.(7)

 University Sports also asserts that it did not have counsel present at the temporary
injunction hearing because Rash was only making a partial or special appearance on its behalf. 
Rash was authorized to adopt Amalgamated Acme's motion to dissolve the TRO, and to argue the
motion to continue the temporary injunction hearing. University Sports did not authorize Rash
to argue the merits of the injunction. University Sports does not offer any support for its argument
that an attorney can make a partial or special appearance as to some matters but not others while
still preserving the party's rights on appeal as to those matters it refused to permit the attorney to
argue.

 We note that University Sports uses Rash's "partial appearance" to work in its favor
in two contrary ways. Rash represented University Sports in order to adopt the motion to dissolve
and to preserve the constitutional arguments it now advances. On the other hand, University
Sports claims Rash was not authorized to represent University Sports on the merits of the
injunction, so it was error to continue with the hearing. University Sports cannot have it both
ways. Rash's limited representation was at University Sports' direction. University Sports cannot
now make any due process complaint about the absence of counsel at the temporary injunction
hearing.

 We next turn to Rule 683, which reads in relevant part: "Every order granting an
injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe
in reasonable detail . . . the act or acts sought to be restrained . . . ." Tex. R. Civ. P. 683. This
rule requires that the trial court provide the reasons it believes the applicant's probable right of
recovery will be endangered if it does not grant the injunction. Transport Co., 261 S.W.2d at
553. The injunction here states:


[T]he Court finds and concludes (a) that Plaintiffs will probably prevail on the trial
of this cause, including that University Sports Publications Co. Inc. has wrongfully
misrepresented itself to and wrongfully communicated with customers and
advertisers of Dean Allen with the intent to interfere in such relationships; (b) that
immediate and irreparable injury, loss or damage will result to Plaintiffs before
trial . . . unless Defendants University Sports Publications Co., Inc. is forthwith
enjoined . . . and (d) that without the issuance of this temporary injunction, said
Defendant will alter the status quo and Plaintiffs will be without any adequate
remedy at law.



 University Sports contends that this language fails to explain why the applicant's
probable right of recovery will be endangered. Minton, on the other hand, compares the language
in the present injunction to that in Inex Indus., Inc. v. Alpar Resources, Inc., 717 S.W.2d 685
(Tex. App.--Amarillo 1986, no writ). In that case, the court held that the trial court sufficiently
stated its reasons "that Wallace and Inex would, if allowed to continue, alter the status quo, tend
to make ineffectual a judgment in favor of Alpar, and leave Alpar without an adequate remedy at
law." Id. at 688. These recitations were held to satisfy Rule 683 as interpreted by the supreme
court. Id.

 Here the trial court sufficiently stated that University Sports' conduct was
interfering with Minton's relationships with his customers and advertisers and that as a result of
this interference, Minton was likely to suffer immediate and irreparable injury. In Transport Co.,
a proper showing of a probable right of recovery was made by outlining the manner in which the
defendant had interfered with the plaintiff's customers, and then stating "that such interference
with customers and markets and diversion of freight tonnage and revenues would result in
irreparable and inestimable damage to the plaintiffs." Transport Co., 261 S.W.2d at 553. We are
unable to distinguish the language in Transport Co. from the present injunction. Therefore, we
hold that the language of the injunction sufficiently describes how Minton's probable right of
recovery will be endangered.

 University Sports next asserts that the injunction fails to describe in reasonable
detail the acts it seeks to restrain in violation of Rule 683. See Tex. R. Civ. P. 683. It argues that
the injunction fails to identify Minton's actual customers and advertisers other than the AISD, the
University of Texas, and the University of Texas--San Antonio. It complains that the injunction
also does not identify Minton's potential customers or advertisers. University Sports claims that
the terms "engaged in a scam," "engaged in unfair competition," and "hurt" are not capable of
reasonable construction and thus their inclusion violates Rule 683. See id. Finally, it asserts that
the terms "violated a law" or "violated a contract" are overly broad. 

 We hold that to the extent the injunction does not specifically name Minton's actual 
customers and advertisers, University Sports has admitted it can identify these parties. First,
attached to the injunction is a fifteen-page list of Minton's advertisers. Second, the injunction
identifies specific customers: AISD, the University of Texas, Host Communications, Inc.,
Longhorn Sports Network, and the University of Texas--San Antonio. Third, University Sports
noted in its brief to this Court that it "presumably attempts to sell their services to a similar client
base." The injunction, therefore, reasonably identifies Minton's actual and potential customers.

 University Sports next claims that the terms "engaged in a scam," "engaged in unfair
competition," and "hurt" are not capable of reasonable construction. The terms need not be
construed. The injunction prohibits University Sports from using those specific terms in reference
to Minton. For example, University Sports may not tell AISD that Minton has "engaged in a
scam." We hold that the use of these terms in the order does not violate Rule 683.

 Finally, University Sports maintains that an injunction "must not be so broad as to
enjoin a defendant from activities which are lawful and a proper exercise of his rights." Villalobos
v. Holguin, 208 S.W.2d 871, 875 (Tex. 1948). It argues that in the event Minton violates a
contract or law, University Sports has the right to make statements to that effect. Minton counters
that an injunction "must be in broad enough terms to prevent repetition of the evil sought to be
stopped, whether the repetition be in form identical to that employed prior to the injunction or
(what is far more likely) in somewhat different form calculated to circumvent the injunction as
written." Republic W. Ins. Co. v. State, 985 S.W.2d 698, 706 (Tex. App.--Austin 1999, pet.
dism'd w.o.j.) (quoting San Antonio Bar Ass'n v. Guardian Abstract & Title Co., 291 S.W.2d
697, 702 (Tex. 1956)). We hold that the injunction is broad enough to prevent University Sports'
circumvention, but narrow enough to allow University Sports to engage in lawful and proper
exercises of its rights--to continue soliciting and selling its services to these advertisers and
customers. We overrule University Sports' second, third, and fourth points of error.


III. Bond

 University Sports contends that the trial court abused its discretion in setting a $500
bond, which it claims is grossly disproportionate to the injury it will incur from the injunction. 
We hold that University Sports waived this issue. University Sports was on notice that the $500
bond set for the TRO would be extended to the injunction. However, University Sports did not
authorize Rash to argue this point to the court, and raises it for the first time on appeal. The issue,
then, was not preserved for our review. See Tex. R. App. P. 33.1. University Sports points to
nothing in the record to show the bond was insufficient. See Biodynamics, Inc. v. Guest, 817
S.W.2d 128, 131 (Tex. App.--Houston [14th Dist.] 1991, writ dism'd by agr.) (overruling point
of error). We overrule University Sports' fifth point of error.


CONCLUSION

 We hold that the trial court properly enjoined commercial speech that is false and
misleading, that the injunction did not violate due process rights or the Texas Rules of Civil
Procedure, and that University Sports waived error as to the amount of the bond. We overrule
University Sports' points of error and affirm the order granting the temporary injunction.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: November 9, 2000

Publish


1. We will refer to Dean Allen and Perry Minton collectively as Minton.
2. Minton contends that University Sports waived its constitutional free speech arguments
because no such arguments appear in the record. To preserve error for appellate review, a party
must have presented to the trial court a timely request, objection, or motion stating its specific
complaint. Tex. R. App. P. 33.1; Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 600
(Tex. App.--Amarillo 1995, no writ). The motion to dissolve the TRO, adopted by University
Sports, incorporated free speech arguments based on article I, section 8 of the Texas Constitution
and the Fourteenth Amendment of the United States Constitution. Cf. Valdez v. Valdez, 930
S.W.2d 725, 728 (Tex. App.--Houston [1st Dist.] 1996, no writ) (explaining that party could
preserve error by joining in motion of another party); Martinez v. State, 833 S.W.2d 188, 191
(Tex. App.--Dallas 1992, writ ref'd) ("A defendant may adopt an objection made by a codefendant
and, thus, preserve error when there is sufficient indication in the record of his intent to adopt the
objection."). By declining to hear the motion to dissolve and proceeding with the temporary
injunction hearing, the trial court implicitly overruled that motion and its arguments therein. See
Tex. R. App. P. 33.1(a)(2)(A); Hardman v. Dault, 2 S.W.3d 378, 381 (Tex. App.--San Antonio
1999, no pet.). The specific references to the constitutional rights at issue, which were brought
to the court's attention and implicitly overruled by the court, preserved error. See Miller Paper
Co., 901 S.W.2d at 600.
3. Minton also contends that University Sports' expression amounts to conduct that is not
protected by either the First Amendment or the Texas Constitution. We do not reach that
argument today.
4. We reach a similar result when we consider that the communications enjoined here are
private. Courts have refrained from protecting speech that is "solely of personal interest." Jones
v. Memorial Hosp. Sys., 677 S.W.2d 221, 224 (Tex. App.--Houston [1st Dist.] 1984, no writ)
(analyzing federal First Amendment cases for guidance regarding Texas Constitution article 1,
section 8). "To be entitled to [constitutional] protection, speech must relate to matters of 'political,
social, or other concern to the community.'" Id. (citing Connick v. Myers, 461 U.S. 138, 150
(1983)). In a decision with facts that parallel this case, the court upheld a temporary injunction. 
Karamchandani v. Ground Tech., Inc., 678 S.W.2d 580, 582 (Tex. App.--Houston [14th Dist.]
1984, writ dism'd w.o.j.). Nand Karamchandani, a stockholder, filed suit seeking liquidation of
Ground Technology's assets. Karamchandani subsequently sent letters to Ground Technology's
clients requesting assistance in the lawsuit. Ground Technology was granted a temporary
injunction to enjoin Karamchandani from writing letters that would interfere with Ground
Technology's contractual relationships. Seeking to dissolve the temporary injunction,
Karamchandani argued that it was a restraint on his free speech, citing article 1, section 8 of the
Texas Constitution. The court disagreed: "The injunction was granted to prevent harm from
private communication, and to preserve the status quo. The communication was to specific
individuals with the intention of coercing them to discontinue business with [Ground
Technology]." Id; see also Menna v. Romero, No. 04-99-00475-CV, 2000 Tex. App. LEXIS 44
(San Antonio January 5, 2000, no pet. h.).(5)
5. We distinguish Markel v. World Flight Inc., 938 S.W.2d 74 (Tex. App.--San Antonio 1996,
no writ). Nonetheless, we believe that if Davenport applied here, that Minton has satisfied that
test. As discussed infra, first, evidence in the record indicates that Minton has and will suffer
imminent and irreparable harm absent the injunction. Second, as discussed with regards to
University Sports' due process arguments, the injunction represents the least restrictive means to
prevent that harm. The injunction is broad enough to prevent University Sports from
circumventing the injunction, but it is not so broad as to affect University Sports' lawful and
proper exercise of its rights. 
' 
 
 -- 
-- 
 
6. We distinguish Markel v. World Flight Inc., 938 S.W.2d 74 (Tex. App.--San Antonio 1996,
no writ). The Markel court considered an injunction that prevented any speech with specific
individuals. Here the injunction is not a blanket prohibition on speech. It does not prevent
University Sports from promoting its own services to Minton's customers and advertisers, or
potential customers and advertisers. Nor does it prevent University Sports from comparing its
own services to those of Minton. Nonetheless, if Davenport applies here, Minton has satisfied the
two-part test. As discussed infra, first, evidence in the record indicates that Minton has and will
suffer imminent and irreparable harm absent the injunction. Second, as discussed with regard to
University Sports' due process arguments, the injunction represents the least restrictive means to
prevent that harm. The injunction is broad enough to prevent University Sports from
circumventing the injunction, but not so broad as to affect University Sports' lawful and proper
exercise of its rights.
7. We also note that University Sports was served February 16 with notice of the temporary-injunction hearing set for February 22. University Sports neither explained to the trial court why
it did not obtain counsel, nor its efforts to obtain counsel. Without such testimony and in light of
Rash's authorization to argue at least some points, we cannot say the trial court's action was
arbitrary and unreasonable. See Computize, Inc. v. NHS Communications, 992 S.W.2d 608, 613
(Tex. App.--Texarkana 1999, no pet.).


ments therein. See
Tex. R. App. P. 33.1(a)(2)(A); Hardman v. Dault, 2 S.W.3d 378, 381 (Tex. App.--San Antonio
1999, no pet.). The specific references to the constitutional rights at issue, which were brought
to the court's attention and implicitly overruled by the court, preserved error. See Miller Paper
Co., 901 S.W.2d at 600.
3. Minton also contends that University Sports' expression amounts to conduct that is not
protected by either the First Amendment or the Texas Constitution. We do not reach that
argument today.
4. We reach a similar result when we consider that the communications enjoined here are
private. Courts have refrained from protecting speech that is "solely of personal interest." Jones
v. Memorial Hosp. Sys., 677 S.W.2d 221, 224 (Tex. App.--Houston [1st Dist.] 1984, no writ)
(analyzing federal First Amendment cases for guidance regarding Texas Constitution article 1,
section 8). "To be entitled to [constitutional] protection, speech must relate to matters of 'political,
social, or other concern to the community.'" Id. (citing Connick v. Myers, 461 U.S. 138, 150
(1983)). In a decision with facts that parallel this case, the court upheld a temporary injunction. 
Karamchandani v. Ground Tech., Inc.,