# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00033-CV

**Roger W. Jenkins, Appellant**

**v.**

**TransDel Corporation, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. 2003-1925, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Roger W. Jenkins, one of two board members and president of appellee TransDel Corporation, owned forty-nine percent of the company's stock. George Hilton, TransDel's vice-president, board member, and majority stockholder, filed this shareholder's derivative suit, alleging that Jenkins violated his fiduciary duties by attempting to acquire TransDel's assets and divert its business to All About Freight Services, Inc., Jenkins's new corporation. TransDel requested a temporary injunction barring Jenkins from interfering with TransDel's business, contacting TransDel's customers, or attempting to collect any funds owed to TransDel.

Following a hearing, the trial court granted TransDel's request and enjoined Jenkins from interfering with Hilton's management and operation of TransDel, withholding TransDel's assets, contacting TransDel's customers, or attempting to divert TransDel's business in any way. Jenkins was ordered to return a truck to Hilton and give him information stored in TransDel's

computer.  Jenkins was allowed to contact TransDel customers that were also All About Freight customers for purposes of collecting balances due to All About Freight.  The trial court filed findings of fact and conclusions of law related to the temporary injunction.  In this accelerated interlocutory appeal, Jenkins contends that TransDel did not establish (1) a probable right of recovery or (2) interim injury without an adequate remedy at law, and that the injunction (3) does not maintain the status quo, (4) violates rule 683 of the rules of civil procedure, (5) is overbroad, and (6) amounts to a prior restraint on Jenkins's constitutional right to free speech.  We affirm the trial court's order.

**Standard of Review**

A temporary injunction is intended to preserve the status quo pending a trial on the merits.  *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.).  A party seeking a temporary injunction need not establish that he will prevail at trial, but must show a probable right of recovery and a probable injury in the interim.  *Walling*, 863 S.W.2d at 57-58; *Universal Health*, 24 S.W.3d at 576.  We review a trial court's decision to grant a temporary injunction under an abuse of discretion standard.  *Walling*, 863 S.W.2d at 58; *Universal Health*, 24 S.W.3d at 576.  Our review of the granting of a temporary injunction is confined to the validity of the trial court's order, and we do not consider the merits of the underlying lawsuit.  *Universal Health*, 24 S.W.3d at 576.  Nor may we substitute our judgment for that of the trial court.  *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).  We will reverse only if we find that the trial court acted unreasonably or arbitrarily or without reference to guiding rules and principles.  *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).  In reviewing the granting of a temporary injunction, we view the evidence in the light

2

most favorable to the trial court's decision and indulge all reasonable inferences in its favor to determine whether the decision was so arbitrary as to exceed the bounds of reasonable discretion.[1] *Universal Health*, 24 S.W.3d at 576. If the trial court heard conflicting evidence and the record contains evidence that reasonably supports the court's decision, we will affirm the order. *Id.* It is not an abuse of discretion for a trial court to base its decision on conflicting evidence. *Davis*, 571 S.W.2d at 862.

## Factual Background

Hilton and Jenkins were business partners for about twenty years. In 2003, TransDel owed money to the Internal Revenue Service and was behind in rent payments. Relations between Hilton and Jenkins soured, apparently having to do at least in part with Hilton's decision as majority shareholder to fire Jenkins's wife, who was working part-time for TransDel. In late August 2003, Jenkins prepared a letter resigning as president of TransDel and stating that he would remain only as an employee; the parties disagree about when Hilton saw that letter and whether he believed Jenkins was still acting as president of TransDel during the fall of 2003. TransDel alleged that Jenkins developed a plan that he represented would help TransDel pay its past due rent; under the

---

[1] Generally, a trial court's findings of fact in a bench case have the same weight and authority as a jury's verdict and are reviewed under the same standards in reviewing legal or factual sufficiency of evidence supporting a jury's answer. *AT&T Corp. v. Rylander*, 2 S.W.3d 546, 551 (Tex. App.—Austin 1999, pet. denied). In an interlocutory appeal such as this, a trial court *may* file findings of fact and conclusions of law but is not required to do so. Tex. R. App. P. 28.1; *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.). Findings and conclusions may be helpful in reviewing for an abuse of discretion, but do not carry the same weight as findings made after a trial on the merits and are not binding when we are reviewing a trial court's exercise of discretion. *Tom James of Dallas*, 109 S.W.3d at 884.

3

plan, All About Freight would assume the lease and TransDel would sublease the premises from All About Freight.  In September 2003, a truck belonging to TransDel was transferred into Jenkins's name.  Hilton believed the transfer was done to get a loan for a final balloon payment on the truck and thought that the truck still belonged to TransDel.  Jenkins testified that the truck was transferred to him because he took out a personal loan to provide $4,000 for the truck.  He also testified that TransDel paid $7,300 to buy the truck and made the payments on the $4,000 loan that Jenkins took out for the remaining balance.

In October 2003, Jenkins and Hilton signed an agreement that stated that Jenkins was starting All About Freight in the same line of business as TransDel ("the Agreement").  The Agreement further stated that TransDel waived any fiduciary duty owed it by Jenkins.  Hilton testified that he did not read the entire document but instead relied on Jenkins's representations about what the Agreement entailed because he trusted Jenkins after their years of working together.  Jenkins also drafted a proposal stating that All About Freight was taking over TransDel's business accounts; Hilton testified that he first saw this document in November 2003, when Jenkins left it behind in a vehicle he had driven.  Jenkins then wrote a letter to TransDel's customers on letterhead listing both TransDel's and All About Freight's names, signing as "President."  The letter stated that TransDel was revamping its structure and changing its name and asked the customers to send payments to All About Freight's post office box, while all other correspondence should continue to be sent to TransDel's address.  Hilton discovered this when a letter was returned to TransDel as undeliverable.  TransDel alleged that Jenkins misrepresented that his plans would help clear up TransDel's debts, when in fact Jenkins was diverting business to his new company.

4

**Discussion**

In his first issue, Jenkins contends that TransDel failed to establish a probable right to recovery, arguing that Hilton signed the Agreement and therefore should be bound by its terms, which included a waiver of any fiduciary duty owed by Jenkins to TransDel. However, although Jenkins argues that Hilton should be bound by the Agreement, there was testimony that Hilton did not know the full substance and import of the document when he signed it and that he signed it in reliance on misrepresentations by Jenkins and in light of a long history of working together and trusting Jenkins's word.[2] Jenkins urges that the agreement is valid "as long as this Court does not hold that JENKINS' conduct of contacting TRANSDEL customers on behalf of [All About Freight] does not constitute self-dealing, bad faith, an intentional adverse act, or an act made with reckless indifference." However, in reviewing the grant of temporary injunctive relief, we view the evidence in the light most favorable to the trial court's decision. There was testimony that Hilton was misled into signing the Agreement and that Jenkins did contact TransDel's customers in bad faith, seeking to lure TransDel's customers to All About Freight. We make no holding on the merits as to whether Jenkins acted wrongly. Such a decision is not before us in this appeal. Based on the record before us and viewing the testimony in the light most favorable to the trial court's decision, we cannot hold it was an abuse of discretion for the trial court to find that TransDel had demonstrated a probable right of recovery. We overrule Jenkins's first issue on appeal.

---

[2] Jenkins cites to the Business Corporation Act, which governs when and what kind of agreements between corporations and their directors or shareholders are valid. *See* Tex. Bus. Corp. Act Ann. arts. 2.30-1, 2.35-1A (West 2003). Because there was testimony that Hilton was misled into signing any such agreement, we cannot hold that it was an abuse of discretion for the trial court to decide that the Act would not apply in this case.

5

Jenkins next contends that TransDel failed to establish a probable injury in the interim with no adequate remedy by law, noting that the trial court did not in its order expressly find imminent or irreparable harm or inadequate remedy. However, there was evidence that All About Freight was interfering with TransDel's business relationships and attempting to acquire TransDel's customers. Jenkins's letter to TransDel's customers stated that TransDel was reorganizing and changing its name and asked that payments be sent to All About Freight. This can be interpreted as some evidence that Jenkins was attempting to acquire TransDel's customers under false pretenses, and the trial court could have concluded that such behavior could result in imminent and irreparable harm of a kind that would not be fairly compensable following trial. *See Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 602 (Tex. App.—Amarillo 1995, no writ) (demise of existing business may constitute irreparable harm); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 710 (Tex. App.—Houston [1st Dist.] 1984, no writ) (difficult to assign dollar value to loss of clientele, goodwill, stability). Thus, it was not an abuse of discretion for the trial court to find that TransDel established a probable injury in the interim with no adequate remedy at law. We overrule Jenkins's second issue.

In his third issue, Jenkins contends that the injunction does not maintain the status quo. Status quo is the "'last, actual, peaceable, noncontested'" state of affairs preceding the controversy. *Universal Health*, 24 S.W.3d at 577 (quoting *Transport Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549, 553-54 (Tex. 1953)). If one party's act changes the relationship between him and another, and the other party contests that action, the status quo to be maintained is not the relationship as it existed after the act, but rather is the state of things as they were before

6

the controversy arose. *Id.* (quoting *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)). Jenkins asserts that the last uncontested situation was in November 2003, just before Hilton realized that Jenkins was trying to acquire TransDel's customers. Up until then, Jenkins asserts, the parties were operating peaceably under the Agreement, and by that time All About Freight had already contacted and perhaps acquired some of TransDel's customers. However, as discussed earlier, Hilton asserted that he signed the Agreement due to Jenkins's misrepresentations. The trial court could have found that the last uncontested status was prior to the fall of 2003, Jenkins's purported resignation of his presidency, and his establishment of All About Freight. We cannot find that the trial court abused its discretion in making such a finding. We overrule Jenkins's third issue.

In his fourth issue, Jenkins contends that the injunction violates rule 683 of the rules of civil procedure because it does not explain how TransDel's right to recover will be harmed if Jenkins is not enjoined from contacting its customers and does not specify what imminent injury may occur. Jenkins argues that because he is no longer TransDel's officer or director, his competition violates no fiduciary duty and cannot endanger TransDel's right to recover.

An order granting a temporary injunction must set forth the reasons for its issuance and describe in "reasonable detail" the acts to be restrained. Tex. R. Civ. P. 683. The trial court's order states that Jenkins was at all relevant times a TransDel board member, diverted business to All About Freight in violation of his fiduciary duty to TransDel, and took possession of TransDel's property. Jenkins was enjoined from (1) interfering with Hilton's operation of TransDel by withholding TransDel's assets and (2) contacting TransDel's customers or trying to divert its

7

business to All About Freight. Jenkins was allowed to contact All About Freight customers that are "coincidentally" TransDel customers for the purpose of collecting outstanding balances due All About Freight. Jenkins was also ordered to return certain property to TransDel.

Rule 683 does not mandate that an order set out each and every element that must be shown by a party seeking a temporary injunction.[3] Instead, it requires a trial court to set out with reasonable specificity and detail the reasons for the injunction and the acts to be enjoined. *See Transport Co.*, 261 S.W.2d at 552-53 (rule 683 does not require order to state specifically why applicant will probably prevail on final trial, only why probable right to recover will be endangered without injunction; enjoined party may seek findings of fact and conclusions of law). This order does precisely that. The trial court explained what Jenkins had done and explained what he was forbidden to do in the future. Those statements sufficiently describe the situation and how TransDel stands to suffer injury in the absence of an injunction. We hold that the order complied with the requirements of rule 683 and overrule Jenkins's fourth issue.

Finally, in his fifth and sixth issues, Jenkins argues that the injunction is overbroad and amounts to a prior restraint on his constitutional rights to free speech. Jenkins again urges that because he is no longer a TransDel director or officer, he owes TransDel no fiduciary duty and should have the right to seek customers for All About Freight. However, under this argument, as soon as a corporate officer resigned from his company, he could use any information or asset he

---

[3] Rule 683 does require an injunction order to include a trial setting, Tex. R. Civ. P. 683, and the absence of such a setting renders an injunction order voidable. *See Qwest Communications Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000). The order in this cause includes the required trial setting.

8

acquired in trust from his former company in direct competition against it and to acquire its customers and business, even using misrepresentations to do so.

TransDel argues that All About Freight was established and began to acquire customers under false pretenses and in derogation of Jenkins's fiduciary duties. Jenkins wrote to TransDel's customers that TransDel was reorganizing, including a name change, and that all payments should in the future be sent to All About Freight. It is conceivable that TransDel's customers could be confused and believe that All About Freight was TransDel's new name, not realizing it was in fact TransDel's competitor. It is not overly restrictive to order Jenkins to refrain from trying to acquire TransDel's customers while this lawsuit is pending.

Nor does this amount to an impermissible prior restraint on free speech. Commercial speech is related "solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980). Because commercial speech is "more verifiable" than other speech and is so important to business, traditional prohibitions against prior restraint may not be applicable. *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 394 (Tex. App.—Austin 2000, no pet.) (citing *Friedman v. Rogers*, 440 U.S. 1, 10 (1979); *State Bd. of Med. Exam'rs v. Burzynski*, 917 S.W.2d 365, 370 (Tex. App.—Austin 1996, writ denied)). Commercial communications that are deceptive, confusing, or even potentially misleading may be enjoined. *Id.*

Jenkins is enjoined from contacting TransDel's customers, other than to collect any outstanding balances due to All About Freight. In the context of the record here, especially considering the November 2003 letter sent to TransDel's customers regarding payments, we cannot

9

hold the trial court abused its discretion in enjoining Jenkins from continuing to contact TransDel's customers or in otherwise interfering with TransDel's operations. We overrule Jenkins's fifth and sixth issues on appeal.

## Conclusion

We have viewed the record in the light most favorable to the trial court's order of injunction and without evaluating the merits of TransDel's claims. Having overruled all of Jenkins's issues on appeal, we affirm the trial court's order.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 24, 2004

10