**REVERSE and REMAND; and Opinion Filed January 13, 2014.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00206-CV

**DONAL R. SCHMIDT, JR, JAMES PENNINGTON, THIMOTHY S. WAFFORD, JUDSON F. HOOVER, ROBERT B. FIELDS, STEPHEN W. WEATHERS, MARK HALL, DANIEL M. COFALL, PENNY SCHMIDT, SIERRA FOXTROT, LP, SIERRA FOXTROT GENPAR LLC, AND SUN RIVER ENERGY, INC., Appellants**

**V.**

**COLIN RICHARDSON, STEVEN R. HENSON, GINGER TOUPAL, AND JOHN DEIN, Appellees**

**On Appeal from the 134th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-12-06318**

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Lewis

This is an interlocutory appeal from the trial court's granting of a temporary injunction. The injunction granted relief to both Colin Richardson, who brought shareholder derivative claims on behalf of Sun River Energy, Inc. ("Sun River"), and Steven R. Henson, who brought individual claims below. For the reasons discussed below, we reverse the trial court's Order Granting Temporary Injunction (the "Order") and remand the case to the trial court for further proceedings.

## Background

Sun River is an oil and gas company. Its primary asset is a significant mineral interest in undeveloped property in Colfax County, New Mexico. Donal R. Schmidt, Jr. is Sun River's President, Chief Executive Officer, and Chairman of the Board of Directors; Thimothy S. Wafford is the company's Chief Operating Officer; and James Pennington is its General Counsel and Secretary. When the price of natural gas fell precipitously in 2012, Sun River was not able to pay Schmidt, Wafford, or Pennington (collectively, the "Officers") their contractual salaries, and by May 2011, the company owed the Officers more than $5 million. In an effort to keep its management team, Sun River's Board of Directors issued the Officers promissory notes for the amounts owed (the "Notes"). Each Note incorporated a Mortgage Security Agreement, Financing Statement and Assignment of Production and Revenue (the "Mortgages"). Sun River had six months to raise the money promised; if it failed to pay timely on the Notes, the Mortgages gave Officers foreclosure rights on the Colfax County, New Mexico property to secure the amounts owed.

During the six-month period, Sun River negotiated an agreement whereby it obtained $500,000 and fifty-two percent of a mining company named Maxwell Resources ("Maxwell"), in return for selling Maxwell an interest in certain "hard" minerals (i.e., not oil or gas) in the New Mexico property. Details of the agreement were taking some time to resolve, and the Board approved a resolution allowing Schmidt to close the deal without Board approval of every step taken (the "Maxwell Resolution").

Sun River defaulted on the Notes, but to this Court's knowledge, none of the Officers has taken any steps to foreclose on the New Mexico property.

Appellee Henson is President and Chief Executive Officer of a company named Rangeford Resources, which is alleged to be a competitor of Sun River in terms of acquiring assets in Colfax County, New Mexico. Henson served on the Board of Sun River for a period of time, but he was terminated, purportedly for violating the company's Code of Ethics and Business Conduct by selling securities while in possession of material, non-public information. Appellee Richardson is a Sun River shareholder and a consultant for Rangeford Resources.

Richardson filed the derivative suit below. He contends the Board's actions in issuing the Notes (and related Mortgages) and the Maxwell Resolution involved conflicts of interest and self-dealing and were designed to fraudulently transfer Sun River's Colfax County asset to the Officers. Henson sued individually for defamation and fraudulent transfer. The two plaintiffs sought and received injunctive relief, enjoining Sun River's Officers and its Board from taking any of the following actions until trial on the merits:

> a. Any and all performance, claims of default, payments, transfers, or other actions pursuant to, based upon or with respect to the Notes and Mortgage, including, but not limited to, any claim, notice or attempt to enforce a default or foreclosure on the Notes and Mortgage;
>
> b. Any payments on Notes based on claims for allegedly past due compensation to the Individual Defendants without Board Approval and without providing notice to the [P]arties.
>
> c. Any and all actions or entry into contracts by Defendant Donal Schmidt, Jr. on behalf of Sun River to "enter into any contract on behalf of the Corporation regarding the lease, purchase, or sale of the Corporation's interests in its hard rock minerals, coal, timber, oil, gas and/or other minerals" in Colfax County without [B]oard [A]pproval and without notice to the Parties.
>
> d. Any and all issuances of shares of stock or the provision of any other compensation, payments, bonuses, gifts, or other transfers by Sun River to Defendants, provided that Sun River is permitted to continue its payroll practices as have been followed in the ordinary course of business since the execution of the Rule 11 Agreement on June 15, 2012 and provided that Sun River need not give notice to Plaintiffs prior to making payroll.

This interlocutory appeal followed.

## Standard of Review

To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 551–52 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.). We review the trial court's grant of a temporary injunction for an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Our review is confined to the validity of the order that grants or denies the injunctive relief. *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 392 (Tex. App.—Austin 2000, no pet.). We may neither substitute our judgment for that of the trial court nor consider the merits of the lawsuit. *Id.* We view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Id.* We may not substitute our judgment for the trial court's judgment unless the trial court's action exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204.

## Imminent Harm

In their first issue, appellants challenge the trial court's finding that appellees could be subject to imminent harm based on the existence of unexercised contractual rights of foreclosure. The determination of whether imminent harm exists is a question of law for the court. *Operation Rescue-National v. Planned Parenthood of Houston & SE. Tex., Inc.*, 975 S.W.2d 546, 554 (Tex. 1998).

### *Claims Related to the Maxwell Resolution*

Initially, we address briefly the alternative basis of appellees' claims for breach of fiduciary duty and fraudulent transfer, namely the Maxwell Resolution. The trial court's Order states that further action under the Maxwell Resolution would result in irreparable harm to

—4—

appellees, but the Order does not find the harm is imminent. A finding of imminent harm is a prerequisite for injunctive relief. *Id.* Without such a finding by the trial court, injunctive relief cannot be supported on that ground. Accordingly, we sustain appellants' first issue as to all claims relating to the Maxwell Resolution.

*Claims Related to Foreclosure on the Notes and Mortgages*

As to claims relating to the Notes and Mortgages, the trial court did make a finding of imminent harm. Appellants challenge that finding, contending that no imminent harm results from the mere existence of unexercised contractual rights of foreclosure. Appellees stress that none of the three Officers has undertaken any step that would be necessary to exercise foreclosure rights: they have given no notice and have instituted no judicial proceedings. Rather, all three Officers testified below they had not decided whether to exercise those foreclosure rights. Appellants rely upon *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246 (Tex. 1983). In that case the Texas Supreme Court distinguished "fear or apprehension of the possibility of injury" from actual injury, saying the former would not support injunctive relief. *Id.* at 248; *see also Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 717 (Tex. App.—Corpus Christi 2001, no pet.) (evidence of "mere fear or apprehension of the possibility of injury" does not establish imminent harm).

Appellees contend the shareholders' risk of actual injury from the Officers is imminent. They point to Sun River's default on the Notes. Given that default, appellees understand the Mortgages to allow the Officers, without giving notice, (a) to take possession of the Colfax County asset or (b) to foreclose upon it, because all of the "triggers" allowing them to do so have occurred.

When written instruments can be given a certain or definite legal meaning or interpretation, we construe them as a matter of law. *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex. App.—Austin 2005, pet. denied). In this case, we conclude the Mortgages do control the imminent harm issue, but not in the manner that appellees contend. Section 6 of each Mortgage identifies three incidents of default that could lead to the possession-or-foreclosure remedies appellees fear:

(1) If there be any default by Mortgagor on Note 1, Note 2 or Note 3 in the payment thereof when and as the same becomes due in accordance with the terms and provisions of the referenced Notes, then Mortgagees, or any one of them, shall give Mortgagor written notice by certified mail setting out such default, and if Mortgagor fails to cure said default within 10 days from the mailing of such notice; or

(2) If there be any other default by Mortgagor under the terms of the referenced Notes or if at any time any Mortgagee under Note 1, Note 2 or Note 3 deems itself or himself insecure and in good faith believes that the prospect of payment of the amounts due under the Secured Obligations owing to them or him is impaired; or

(3) If Mortgagor or its successors in interest applies for relief under any bankruptcy or other law for the relief of debtors, suffers, or is adjudicated bankrupt or insolvent under any federal or state law, or makes an assignment for the benefit of creditors, or applies for or suffers the appointment of a receiver, or if a receiver be appointed by any court for any of the Mortgaged Property, and such receiver is not discharged within 30 days after the date of such appointment.

No party argues the third default provision applies here; there is no issue of bankruptcy or receivership in this case. But appellees contend the second default provision applies, because it speaks to the Officers—"at any time"—having the good faith belief "that the prospect of payment of the amounts due under the Secured Obligations owing to them . . . is impaired." The language of this subsection is clearly intended to address circumstances that could arise during the six-month period the Notes were pending and payment was to be made by Sun River. It speaks to feelings of insecurity as to the *prospect* of payment. "Prospect," in this context, means

"the act of looking forward" or "a mental picture of something to come." WEBSTER'S NEW COLLEGIATE DICTIONARY 945 (9th ed. 1985). Indeed, cases that discuss insecurity clauses generally deal with acceleration of debt, i.e., with requiring all future payments to be made earlier than had been scheduled. *See generally Am. Bank of Waco v. Waco Airmotive, Inc.*, 818 S.W.2d 163 (Tex. App.—Waco 1991, writ denied); *Seitz v. Lamar Sav. Ass'n*, 618 S.W.2d 142 (Tex. Civ. App.—Austin 1981, no writ).[1] In the case before us, the deadline for payment on the Notes has long since passed. Thus, a mortgage provision providing a remedy for insecurity resulting from a good faith belief the "prospect" for payment is impaired is no longer relevant. We conclude section 6(2) of the Mortgages cannot now operate to create any imminent danger of injury to appellees; it does not apply to the current circumstances of these parties.

Section 6(1) of the Mortgages does apply to the current circumstances. Sun River defaulted on the Notes when they became due, as section 6(1) envisions. However, section 6(1) also contains a condition precedent to the post-default possession-or-foreclosure remedies: the Mortgagees—i.e., the Officers—must give Sun River notice by certified mail setting out the default, and allowing a ten-day opportunity to cure the default. No such notice has been given. Imminent harm is established by showing that the defendant will engage in the activity sought to be enjoined. *See State v. Morales*, 869 S.W.2d 941, 946 (Tex. 1994). Given the guarantee of notice found in section 6(1), and the fact that notice has not been given, we cannot say appellees are threatened with imminent harm. The trial court abused its discretion in deciding to the contrary.

---

[1] Appellees rely upon a provision in the Notes as part of their argument that "there is no requirement that any of these insiders provide any notice whatsoever to Sun River before taking action." However, the provision states only that "no notices are required to be given by Payee to Maker in the event of default and *acceleration*." (Emphasis added.) This waiver of a notice requirement for acceleration is in keeping with section 6(2)'s focus of future payments and acceleration during the pendency of the six-month payment period. Acceleration is no longer an issue under the Notes; all payments are past due.

We sustain appellants' first issue as to all claims relating to foreclosure on the Notes and Mortgages and decide appellants' first issue in their favor.

## Conclusion

Appellees have failed to establish they would be subjected to imminent harm without injunctive relief. Accordingly, the trial court's injunction cannot stand. *See Operation Rescue-National*, 975 S.W.2d at 554 ("A prerequisite for injunctive relief is the threat of imminent harm."). Given our resolution of appellants' first issue, we need not reach either remaining issue. We reverse the trial court's Order and remand this case to the trial court for further proceedings.

/David Lewis/
DAVID LEWIS
JUSTICE

130206F.P05

–8–



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DONAL R. SCHMIDT, JR., JAMES
PENNINGTON, THIMOTHY S.
WAFFORD, JUDSON F. HOOVER,
ROBERT B. FIELDS, STEPHEN W.
WEATHERS, MARK HALL, DANIEL M.
COFALL, PENNY SCHMIDT, SIERRA
FOXTROT, LP, SIERRA FOXTROT
GENPAR LLC, AND SUN RIVER
ENERGY, INC., Appellants

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-06318.
Opinion delivered by Justice Lewis.
Justices Bridges and Fillmore participating.

No. 05-13-00206-CV        V.

COLIN RICHARDSON, STEVEN R.
HENSON, GINGER TOUPAL, AND JOHN
DEIN, Appellees

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

It is **ORDERED** that appellants DONAL R. SCHMIDT, JR., JAMES PENNINGTON,
THIMOTHY S. WAFFORD, JUDSON F. HOOVER, ROBERT B. FIELDS, STEPHEN W.
WEATHERS, MARK HALL, DANIEL M. COFALL, PENNY SCHMIDT, SIERRA
FOXTROT, LP, SIERRA FOXTROT GENPAR LLC, AND SUN RIVER ENERGY, INC.
recover their costs of this appeal from appellees COLIN RICHARDSON, STEVEN R.
HENSON, GINGER TOUPAL, AND JOHN DEIN.

Judgment entered this 13th day of January, 2014.

/David Lewis/
_____
DAVID LEWIS
JUSTICE