# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00442-CV

---

**Jim Clements, Guadalupe Gutierrez, Cynthia Gutierrez, and Carolyn Lehmann, Appellants**

**v.**

**Jason McBroom, Holly McBroom, Linda McBroom, William Michael McBroom, Kevin Patrick McBroom, and Melissa Jo McBroom, Appellees**

---

**FROM THE 155TH DISTRICT COURT OF FAYETTE COUNTY
NO. 2024V-296, THE HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

---

## O P I N I O N

Jim Clements, Guadalupe Gutierrez, Cynthia Gutierrez, and Carolyn Lehmann (Landowners) appeal from the trial court's dismissal, under Texas Rule of Civil Procedure 91a, of their nuisance lawsuit against the McBrooms.[1]  *See* Tex. R. Civ. P. 91a.  For the following reasons, we reverse the trial court's judgment and remand for further proceedings.

## BACKGROUND

Landowners filed an original petition for permanent and temporary injunction, and later an amended petition for injunctive relief and damages (their live pleading), seeking to temporarily halt the construction of a planned 200-megawatt Battery Energy Storage System

---

[1]  Appellees are Jason McBroom, Holly McBroom, Linda McBroom, William Michael McBroom, Kevin Patrick McBroom, and Melissa Jo McBroom.

(BESS) on the McBrooms' property until the McBrooms ensure the implementation of a "Court-approved hazard mitigation plan, including specific measures for fire containment, contamination prevention, and emergency response." Landowners additionally sought a permanent injunction preventing the BESS's operation unless the McBrooms "adhere to ongoing safety, environmental, and monitoring protocols to mitigate risks" and damages to compensate for loss of property value, increased insurance costs, and loss of use and enjoyment of property. In their live petition, filed November 26, 2024, Landowners asserted a claim against the McBrooms for private nuisance based on negligence to support their request for injunctive relief and damages. Landowners' factual allegations include the following:

- Construction on the planned BESS facility could begin as early as "the fourth quarter of 2025," with operations beginning in 2026;

- The planned BESS relies on lithium-ion battery technology, which is prone to "thermal runaway," a self-sustaining process triggered by overheating that can lead to the rapid release of flammable gases, high-temperature fires, and even explosions;

- The McBrooms had already leased forty acres to Staccato Storage, LLC, a former subsidiary of Samsung, which planned to build the BESS on the leased property;

- The County had accepted an application for tax abatement from Staccato for the BESS project;

- At a town-hall meeting to consider Staccato's application for a tax abatement, a Staccato representative publicly disclosed that the company's plan for handling a thermal runaway was to simply "let it burn" and that Staccato planned to have "massive water tanks" at the site for fighting potential fires, holding "25," "2,500," or "25,000" gallons of water;

- A local, experienced firefighter rebutted the Staccato representative by stating that even a 25,000 gallon water tank would last only about twenty minutes fighting a thermal-runaway fire;

- The phenomenon of thermal runaway is well-documented in federal research and has been observed in multiple large-scale BESS incidents, underscoring the immediate risks posed to nearby residents;

2

- Despite these substantial hazards, Texas currently lacks adequate regulations for BESS facilities, leaving the burden of risk entirely on local residents;

- Fayette County is ill-equipped to address the unique and severe dangers associated with BESS fires. The County relies on a volunteer firefighting force that lacks the specialized training, personnel, and resources—such as water supplies and hazardous-material-response capabilities—necessary to manage such incidents;

- Fire Chief Eddie Schneider confirmed at a local town hall that the County's emergency response infrastructure is insufficient for handling BESS fires, noting that the County lacks both the resources and an emergency plan tailored to the hazards posed by lithium-ion battery fires;

- The County's unpreparedness directly endangers Landowners, as the County cannot effectively contain a BESS fire or prevent its resulting contamination from spreading through the environment;

- Landowners' alarm and apprehension are well-founded. Thermal-runaway events in similar BESS facilities have led to catastrophic fires requiring prolonged suppression efforts and extensive environmental remediation. Toxic runoff from firefighting operations has been shown to contaminate local water supplies and ecosystems, with severe consequences for public health and agriculture;

- Without sufficient safeguards or emergency preparedness measures in place, this project endangers not only the Landowners but also the broader Fayette County community;

- The McBrooms' property, where the subject BESS will be, is within one mile of each of the Landowners' properties;

- Within a two-mile radius of the McBrooms' property are a number of notable community landmarks, which could be negatively impacted by a thermal-runaway fire at the BESS facility, including a church, a high school, a forty-two-acre retreat center, a major highway, and residential properties;

- Unlike wildfires—which follow predictable burn patterns, affect primarily vegetation and air quality, and are familiar to local-volunteer firefighters— thermal-runaway fires burn at extreme temperatures; release toxic gases; risk explosions; require specialized cooling systems, chemical suppressants, and hazardous-material protocols; and contaminate water and soil with hazardous chemicals and heavy metals, threatening long-term damage to Fayette County's environment, agriculture, and public health. Thermal-runaway fires also reignite repeatedly, prolonging their impact and exacerbating contamination, unlike wildfires, which can be contained with traditional methods.

Beyond these allegations, Landowners' petition alleged—in twenty additional pages—the specific circumstances and concerns of each Landowner (such as how they each use their property for recreation and livelihood and how the risks of the BESS have affected and will continue to affect their uses); the thwarted efforts Landowners have made to obtain information from the McBrooms about any safety and environmental-mitigation measures planned; multiple fires that have occurred at similar BESS facilities in Arizona and California in the last several years, with fire durations between thirteen hours and six days; a "Strategic Plan" publication by the federal government on BESS facilities, noting that thermal runaways leading to fire or explosion are the primary safety concern with respect to the facilities; and measures taken by several Texas municipalities to regulate or limit BESS facilities in response to concerns about safety, environmental risks, and property impacts. Landowners alleged that the planned BESS without sufficient safeguards and emergency-preparedness measures in place has impacted their "daily sense of safety and peace of mind" and caused them "apprehension and alarm."

The McBrooms filed a motion to dismiss under Rule 91a, arguing that Landowners' nuisance claim is not cognizable under Texas law. The McBrooms contended that Landowners' claims are based solely on fear, apprehension, or other emotional reaction resulting from the lawful operation of industries, for which Texas law does not allow recovery without some kind of "invasion of the plaintiffs' property." After a hearing, the trial court granted the McBrooms' motion. After a later hearing on attorneys' fees, the trial court signed a final judgment dismissing Landowners' claims with prejudice and awarding the McBrooms attorneys' fees. *See* Tex. R. Civ. P. 91a.7. Landowners perfected this appeal.

4

**DISCUSSION**

### *Rule 91a motions*

Landowners argue on appeal that the trial court erred in dismissing their lawsuit under Rule 91a because their petition states a legally cognizable claim. Dismissal is appropriate under Rule 91a, as relevant here, "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* R. 91a.1. Whether this dismissal standard is satisfied depends "solely on the pleading of the cause of action." *Id.* R. 91a.6. We review the merits of the McBrooms' Rule 91a motion de novo because whether Landowners have an available legal or equitable remedy under the facts alleged is a question of law. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam). When reviewing a trial court's ruling on a 91a motion, we must construe the pleadings liberally in favor of the plaintiffs. *Id.* (citing Tex. R. Civ. P. 91a.1).

### *Private nuisance law*

"The law of 'nuisance' seeks to balance a property owner's right to use his property 'as he chooses in any lawful way' against his duty not to use it in a way that "injure[s] another.'" *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 590–91 (Tex. 2016) (citation omitted). In *Crosstex*, recognizing that the caselaw suffers from a "lack of a clear delineation of the circumstances in which the law imposes liability against one who creates a nuisance," the supreme court attempted "to provide a more comprehensive, though certainly not exhaustive, explanation of the circumstances in which Texas law may hold a party liable for causing a private nuisance." *Id.* at 591. The *Crosstex* opinion begins by discussing the definition of a nuisance, explains that nuisance is "merely a type of legal injury and not a cause

5

of action in and of itself," proceeds to discuss the "types of conduct for which a defendant can be legally liable for creating a nuisance," and concludes by "confirming that whether a defendant is liable for creating a nuisance generally presents fact issues for the jury to decide." *Id.*

A private nuisance is "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id.* at 593. The definition "appropriately describes a private nuisance that may be actionable under the common law." *Id.* at 594. The term "nuisance" refers "not to a cause of action or to a defendant's conduct but to the legal injury that the conduct causes and that gives rise to the cause of action." *Id.* at 604. Noting that the "authorities are consistently clear that there must be some level of culpability on behalf of the defendant"—that is, that nuisance "cannot be premised on a mere accidental interference"—the supreme court specified "three general categories of conduct that may support liability for creating a nuisance": (1) intentional nuisance, (2) negligent nuisance, and (3) strict-liability nuisance. *Id.* at 604–08. Landowners have pleaded the second category—that the McBrooms, through their negligence, have caused or will cause a private nuisance by substantially interfering with Landowners' use and enjoyment of their properties:

> Defendants have breached their duty of care, owed to Plaintiffs, by leasing Defendants' land for BESS installation without first requiring that adequate safeguards be implemented. A reasonable landowner in Fayette County would not authorize a high-risk industrial project without ensuring that its neighboring residents have protection from foreseeable risks, such as thermal runaway fires and environmental contamination. [citation omitted] Here, Defendants' actions have created a substantial interference with Plaintiffs' property rights, impacting their daily sense of safety and peace of mind.

6

These allegations state a cause of action for negligence and assert the legal injury of a private nuisance caused by the McBrooms' actions. *See id.* at 607; *cf. Amini v. Spicewood Springs Animal Hosp., LLC*, No. 03-18-00272-CV, 2019 WL 5793115, at *10 (Tex. App.—Austin Nov. 7, 2019, no pet.) (mem. op.) (concluding under *Crosstex* that plaintiffs had not pleaded "an actual cause of action" by merely asserting "private nuisance" but noting that even construing pleadings as asserting actionable claim of negligent conduct giving rise to nuisance injury, plaintiffs had not established prima facie case of substantial and unreasonable interference).

With respect to a defendant's liability for causing a nuisance, the questions of whether an interference with the use and enjoyment of property is substantial, whether the effects of such an interference on the plaintiffs are unreasonable, whether the defendant intentionally or negligently created the interference, and whether the interference results from abnormally dangerous activities (i.e., strict-liability nuisance) generally present questions of fact for the jury to decide. *See Crosstex*, 505 S.W.3d at 609. The supreme court has expressly acknowledged the following non-exclusive forms of legal injury that are cognizable if the defendant causes a condition that substantially interferes with the plaintiffs' use and enjoyment of their property: physical damage to the plaintiffs' property, economic harm to the property's market value, harm to the plaintiffs' health, and psychological harm to the plaintiffs' "peace of mind." *See id.* at 596. Landowners have pleaded psychological harm.

Additionally, it is "well-settled that three different remedies are potentially available to a claimant who prevails on a private-nuisance claim: damages, injunctive relief, and self-help abatement. . . . However, not all remedies are available in every case." *Id.* at 610 (citations omitted). The amount and categories of damages available depend on whether the nuisance is temporary or permanent, and regardless of whether a nuisance is temporary or

7

permanent, injunctive relief is separately available when the "necessary foundational findings have been made." *See Huynh v. Blanchard*, 694 S.W.3d 648, 673 (Tex. 2024). The "forward-looking decision" to grant or deny an injunction is within the sound discretion of the trial court, and although a jury may have to settle relevant factual disputes about what happened, questions regarding "the expediency, necessity, or propriety of equitable relief" are within the trial court's sound discretion. *See id.* at 673–74 (citations omitted).

### *Application of nuisance law to the Rule 91a motion*

In their live pleading, Landowners request temporary and permanent injunctive relief, supporting their request with allegations that the McBrooms have leased their property to Staccato, that Staccato is planning to build a 200-megawatt BESS beginning as early as October 2025 (about eleven months hence), that Staccato has applied with the County for tax abatement for the facility, that the County is ill-equipped to handle the severe dangers of thermal runaways, that Staccato does not have a sufficiently designed hazard-mitigation plan, and that the McBrooms have negligently allowed Staccato to proceed with its plans without requiring it to have such mitigation plan. The Landowners additionally allege the above-detailed facts, including that they are currently suffering psychological harm and will continue to suffer such harm, as well as severe physical and financial harm to their properties and livelihoods, should the BESS be constructed and operated without the requested injunctive relief.

To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law. *Id.* at 674. In the context of nuisances, the supreme court and other courts have recognized that injunctive relief is available not only for actual, existing nuisances but also for nuisances that are

8

threatened or prospective: "if the nuisance is threatened, the prerequisite [of imminent harm] is met when injury is imminent and will necessarily be sustained." *Id.* at 679 (citing *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex. App.—Houston [14th Dist.] 1989, writ denied), and *O'Daniel v. Libal*, 196 S.W.2d 211, 213 (Tex. App.—Waco 1946, no writ)); *see 1717 Bissonnet, LLC v. Loughhead*, 500 S.W.3d 488, 497 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("A court may exercise its equitable power to enjoin a prospective nuisance under certain circumstances."); *see also Bruington v. Chesmar Homes, LLC*, No. 08-23-00015-CV, 2023 WL 6972987, at *11 (Tex. App.—El Paso Oct. 20, 2023, no pet.) (mem. op.) (acknowledging that injunctive relief is available to prevent imminent nuisance but concluding, after reviewing evidence, that plaintiffs had produced no objective evidence of imminent injury and instead had only subjective fear that dust and runoff might enter their property); *Holubec v. Brandenberger*, 214 S.W.3d 650, 657–58 (Tex. App.—Austin 2006, no pet.) (acknowledging that injunctive relief is available to prevent proposed property use that will create nuisance but, after analyzing evidence, holding that plaintiff had not shown that proposed operation of feedlot anywhere on defendant's property would necessarily create nuisance).

Although an injunction will not lie to prevent an alleged threatened act if the commission of the act "is speculative and the injury from which is purely conjectural," a finding of imminent harm "can follow from a variety of circumstances, including actual injury, a pattern of actions, a threat to undertake harmful action, and other non-speculative bases to conclude that harm is impending." *Huynh*, 694 S.W.3d at 679. "Thus, 'showing that the defendant will engage in the activity sought to be enjoined' is sufficient to establish imminent harm for purposes of injunctive relief." *Id.* (quoting *Schmidt v. Richardson*, 420 S.W.3d 442, 447 (Tex. App.—Dallas 2014, no pet.)); *see Freedman*, 776 S.W.2d at 216 (concluding that defendants'

9

intent to construct parking lot was imminent, based on evidence that existing house had been demolished, and whether such threatened condition and use of property would be nuisance was question for factfinder); *Vaughn v. Drennon*, 202 S.W.3d 308, 313 (Tex. App.—Tyler 2006, pet. denied) (explaining that finding of imminent harm can be based on actual injury, threat of imminent harm, or another's "demonstrable intent to do that for which injunctive relief is sought"). Therefore, the McBrooms' argument that Landowners have no claim because there is no existing "condition" on their property for which they could be liable for causing a nuisance is inapposite.

In *Hicks v. Andrews*, a federal court in Texas recently addressed the analogous Rule 12(b)(6) motion under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 12(b)(6) (authorizing defendant to file motion asserting that plaintiff has failed "to state a claim upon which relief can be granted"), with respect to a similar threatened project. *See* No. 5:23cv81-RWS-JBB, 2024 WL 5274548, at *6 (E.D. Tex. Nov. 21, 2024) ("There are . . . circumstances in which a court may exercise its equitable power to enjoin a prospective nuisance."); *see also Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (noting that case law interpreting federal Rule 12(b)(6) is instructive for Rule 91a analysis). Citing the supreme court's *Huynh* opinion, the district court determined that the plaintiffs had sufficiently alleged that the anticipated nuisance that would be caused by defendants' proposed solar farm and BESS was "imminent and reasonably certain," and their prayer to enjoin defendants' construction of said facilities until defendants could demonstrate to the court that the facilities would not create a nuisance was legally viable in the face of defendants' Rule 12(b)(6) motion. *Hicks*, 2024 WL 5274548, at *20–22 ("[T]he Court finds the allegations . . . in support of Plaintiffs' request for injunctive relief to redress a prospective nuisance are sufficient to

10

plausibly show an injury that is imminent and that will necessarily be sustained by the threatened actions of Defendants.").

Similarly here, we conclude that Landowners have sufficiently alleged facts that, if proven, would support their request for injunctive relief to redress a prospective nuisance that plausibly will be caused by the McBrooms' and Staccato's imminent actions that will likely cause irreparable harm for which they would have no adequate remedy at law. Viewing the allegations liberally and making all reasonable inferences in Landowners' favor, as we must, we conclude that they have sufficiently pleaded that the McBrooms will indeed engage in the activity sought to be enjoined—allowing Staccato to construct and operate a BESS on their property without sufficient hazard-mitigation plans and measures in place, highlighted by Staccato's alleged demonstrable intent to construct and operate the BESS in such manner—to entitle Landowners to the relief sought and pass the hurdle of a Rule 91a motion. *See* Tex. R. Civ. P. 91a. Landowners' allegations are sufficient to state a cognizable claim for the court to exercise its equitable power to enjoin a prospective nuisance, if proven, *see Huynh*, 694 S.W.3d at 679, and the trial court erred in determining otherwise.

## CONCLUSION

We reverse the trial court's judgment dismissing appellants' lawsuit and awarding the McBrooms attorneys' fees and remand this cause for further proceedings consistent with this opinion.

_____

Karin Crump, Justice

11

Before Chief Justice Byrne, Justices Theofanis and Crump

Reversed and Remanded

Filed:   April 9, 2026